**STATE of Missouri, Respondent,**

v.

**Lillian HANEY, Appellant,**

No. 44240.

Supreme Court of Missouri.

Division No. 2.

April 11, 1955.

Green & Green, Will H. D. Green, H. D. Green, West Plains, for appellant.

Weldon W. Moore, Houston, for respondent.

ANDERSON, Special Judge by transfer order.

This is an appeal from an order of the Texas County Circuit Court overruling a motion to set aside a judgment of forfeiture of a recognizance, and a motion to quash an execution on said judgment. Jurisdiction of the appeal is in this court for the reason that the state is a party to said cause. See art. V, Section 3, Constitution, V.A.M.S.

The appellant, Lillian Haney, is the mother of Jess Haney who, on April 30, 1952, was charged in the Magistrate Court of Texas County with the crime of grand larceny. Jess Haney was thereafter arrested and, upon being brought before the magistrate, waived preliminary hearing. He was thereupon bound over to the circuit court and his bond set at $4,000. Thereafter, on May 2, 1952, said Jess Haney made bond in said sum—appellant, Lillian Haney, and Phyllis M. Haney, wife of Jess

Haney, executing said bond as sureties. Thereafter, on May 9, 1952, an information was filed in the circuit court charging Jess Haney and Ray Wilson with larceny of an automobile, the property of J. C. Richardson. The cause was continued from time to time and, on February 9, 1953, the following entry was made in the judge's docket record: "Recognizance of defendant, Jess L. Haney, forfeited. Scire Facias ordered. Capias Warrant for apprehension and arrest of Jess L. Haney ordered. Upon apprehension and arrest of Jess L. Haney, his appearance bond fixed at $4000.00 to be approved by Clerk."

On February 14, 1953, a writ of scire facias was issued which directed the sheriff to summon Lillian Haney and Phyllis M. Haney to appear on May 2, 1953, the first day of the next term of court, and show cause why the judgment of forfeiture should not be made absolute, and why execution should not issue in favor of the state, according to the force, form and effect of said recognizance.

Personal service of the writ was obtained on Lillian Haney and Phyllis M. Haney on March 23, 1953. Thereafter, said cause was continued from time to time, and until October 22, 1953. On that day, according to the transcript, the following entry in said cause was made on the judge's docket record: "Judgment by default as to Defendant, Principal and Sureties. Fieri Facias Writ ordered as to all." The evidence in the case shows that the judgment was not entered in the judgment record.

An execution, in the usual form, was issued on November 10, 1953, for the sum of $4,000, the amount of the debt recovered, and $39.85 costs. Said writ was made returnable February 8, 1954. On February 7, 1954, the sheriff made his return, which recited that the writ had been executed by levying on certain parcels of real estate belonging to the parties, that portion belonging to Lillian Haney being described in the return to the writ as follows: "All that part of the North West Quarter of Section Fourteen (14), Township Twenty-nine (29) North, Range Ten (10) West, lying South and West of Elk Creek, excepting therefrom a strip of the North side of said Tract lying North of what is supposed to be the High Water line."

Thereafter, two separate motions were filed by appellant, one praying that the forfeiture be set aside, and the other that the execution be quashed. Both motions, after a hearing, were overruled.

In this court, appellant complains that the court erred in overruling her motion to quash the execution. The grounds relied on in said motion to quash were: (1) that there was no valid forfeiture for the reason there was no service on the circuit clerk of the papers affecting the liability of the parties, as contemplated by Supreme Court Rule 32.12, 42 V.A.M.S.; (2) that said levy was void because of the failure of the sheriff to apprise defendant of her statutory exemptions, as provided by Section 513.445 RSMo 1949, V.A.M.S.; (3) that the judgment was void because the amount thereof was not shown; and (4) that the land levied on was defendant's homestead and therefore exempt from execution.

Appellant was a widow, her husband having died September 11, 1947. The land in question was purchased by her in 1951 from her son Jess Haney. At that time Mr. Glover Davis occupied the premises as tenant, and he continued to do so for about one year after appellant's purchase. Thereafter, the premises were leased to Mr. Childers. Mr. Childers' family did not move onto the land, but from time to time during the term of his lease another family occupied the house whose name appellant did not know. At the time of the hearing the farm was rented to a Mr. Bryant, who lived on the premises.

Appellant testified that she purchased this property with the intention of occupying it as her home. Prior to that time, and at times prior to Jess Haney's arrest in April, 1952, appellant resided with her son James F. Haney, on the latter's farm located about one mile from her place. Jess Haney and his wife Phyllis M. Haney, together with their three children, also lived at the James F. Haney farm.

Appellant further testified that she reserved an upstairs room in the farm house located on her land, in which room she has lived from time to time. There are six rooms in the house in question. In the room reserved appellant has, according to her testimony, a bed, desk, trunk, and an oil stove on which to cook meals. She stated that she started living in this room in 1951, and has lived there part of the time since, when not working. She stated that she did not recall the exact date she first moved there, or how long she remained on the premises in 1951. She stated that since 1951 she had lived there at different times, the longest period being four to five weeks. It also appears from appellant's testimony that at the time of the hearing she was living with her son James, and that she had resided there a good part of the time since her purchase of the land in question. Appellant could not recall how much of the time she lived on her place, or how long she lived with her son James, but stated that when out of work she would go back to one place or the other. During the summers of 1951 and 1952 appellant worked in Meeker, Colorado, as a cook on a Dude Ranch. She also worked in Houston and Cabool, Missouri. She did not give the time or duration of her employment at these latter places. She stated, however, that usually when out of work she would return to live at the James Haney place.

Appellant further testified that after her son's disappearance the latter's wife and three children lived with her from time to time. All five occupied the room which she had reserved for her use as a home. Appellant stated she did not know exactly how long her daughter-in-law and children resided there, but did say they had not lived there during the year next prior to the hearing. Appellant further testified:

"Q. And you aren't obligated to support the children of Phyllis Haney, Jess Haney's wife? A. I help her.

"Q. Does she draw any assistance? A. She draws child aid."

Plaintiff further testified that she claimed the premises in question as her homestead, and that it has always been her intention to return to live at this place.

Appellant contends that the trial court erred in overruling her motion to quash. It is urged in support of this contention that there was no valid judgment upon which to base the issuance of an execution—appellant's theory being that until a judgment is spread upon the judgment record an execution will not lie. There is no merit to the point.

█ A judgment is operative from the date of its rendition and the failure of the clerk to perform the ministerial duty of formally entering it upon the record cannot delay its operation for any purpose. The right to execution follows immediately upon the rendition of judgment. Fontaine v. Hudson, 93 Mo. 62, 5 S.W. 692; State ex rel. Garvey v. Buckner, 308 Mo. 390, 272 S.W. 940; Pelz v. Bollinger, 180 Mo. 252, 79 S.W. 146; Sharp v. Lumley, 34 Cal. 611; Stevens v. Manson, 87 Me. 436, 32 A. 1002; Cinebar Coal & Coke Co. v. Robinson, 1 Wash.2d 620, 97 P.2d 128; People ex rel. Holbrook v. Petit, 266 Ill. 628, 107 N.E. 830; Epps v. Bowen, 118 N. J.L. 50, 191 A. 110.

Appellant further contends that the judgment is void because it is vague and indefinite, for the reason that the docket entry does not reveal the names of the parties or the amount of recovery. There is no merit to this contention.

█ It is a well settled rule of law, approved by text writers and this court, that if there is any uncertainty in the judgment as to the party for or against whom it is rendered, it is proper to look to the entire record, including the pleadings and process to ascertain for or against whom the judgment is rendered. 1 Freeman on Judgments (5th Ed.) sec. 80; Smith v. Kiene, 231 Mo. 215, 132 S.W. 1052; Thompson v. Chicago, Santa Fe & Cal. Ry. Co., 110 Mo. 147, 19 S.W. 77; Bendy v. W. T. Carter & Bro., Tex.Civ.App., 5 S.W.2d 579; Bendy v. W. T. Carter & Bro., Tex.Com.App., 14 S.W.2d 813; Brandt v. Brandt, 138 Fla. 243, 189 So. 275; Goodman v. Tri State

Mutual Life Ins. Co., 318 Ill.App. 388, 48 N.E.2d 214; Reed v. Runyan, 226 Ky. 261, 10 S.W.2d 824; Wood v. Gulf Production Co., Tex.Civ.App., 100 S.W.2d 412; Smith v. Switzer, Tex.Civ.App., 270 S.W. 879; Smith v. Chenault, 48 Tex. 455; Davis v. Ivey, 93 Fla. 387, 112 So. 264; Mellon v. Ivey, 275 U.S. 526, 48 S.Ct. 19, 72 L.Ed. 407; State ex rel. Melbourne State Bank v. Wright, 107 Fla. 178, 145 So. 598; 49 C.J.S., Judgments, § 75, p. 194.

█ If a judgment is ambiguous or silent as to the amount of recovery, reference may be had to the pleadings and other parts of the record and the judgment will be presumed to be in the amount therein shown. 49 C.J.S., Judgments, § 442, p. 873.

█ The entry on the judge's docket evidencing the judgment rendered was as follows: "Judgment by default as to defendant, principal and sureties. Fieri Facias Writ ordered as to all." From the record proper it appears that the State of Missouri is the party plaintiff in this proceeding, and that Jess Haney is the defendant. It also appears from the record that on the 9th day of February, 1953, the recognizance of Jess Haney was forfeited and a scire facias ordered. On February 14, 1953, a scire facias was issued for Lillian Haney and Phyllis M. Haney. This process, of course, is a part of the record in the case and is incorporated in the transcript on appeal. From it, and from the bond, it appears that on May 2, 1952, Jess Haney, as principal, and Lillian Haney and Phyllis M. Haney, as sureties, entered into a recognizance, jointly and severally binding themselves for the payment of $4,000 to the State of Missouri, conditioned for the appearance of the said Jess Haney on the first day of the next term of court. It also appears from the record that the said Jess Haney made default and a judgment of forfeiture of said bond was ordered. The foregoing facts are recited in the writ which commanded the sheriff to summon Lillian Haney and Phyllis M. Haney to appear at the next term of court and show cause why the

judgment of forfeiture should not be made absolute and execution issue thereon in favor of the State of Missouri, according to the force, form and effect of said recognizance.

In our opinion, the judgment as evidenced by the judge's docket entry, when considered in connection with the whole record, is sufficiently definite as to parties and amount to support the execution against appellant's property.

Appellant contends that the premises in question constituted her homestead and, for that reason, it was the duty of the sheriff, before making the levy, to apprise her of her homestead rights.

█ By statute, the right to claim a homestead exemption is conferred on every "housekeeper" or "head of a family". Section 513.475 RSMo 1949, V.A.M.S. The words "housekeeper" and "head of a family," as used in the statute, are synonymous. Gammon v. McDowell, 317 Mo. 1336, 298 S.W. 34; Kansas City Granite & Monument Co. v. Jordan, 316 Mo. 1118, 295 S.W. 763; Elliott v. Thomas, 161 Mo. App. 441, 143 S.W. 563. The right cannot originate without the existence of a family of which the one claiming the right is the head.

█ To constitute a "family" within the meaning of the homestead laws there must be two or more persons residing together under one head or manager, with the legal or moral obligation on the part of the person who occupies the position as head of the house or family to support one or more of the other members, and there must be a state of dependency, at least partial, on the part of the one receiving such support. Ridenour-Baker Grocery Co. v. Monroe, 142 Mo. 165, 43 S.W. 633. The family relationship must be of a permanent and domestic character, and the living together must not be merely a temporary expedient rendered necessary or desirable by reason of temporary conditions. And one who claims a homestead right in premises in a proceeding instituted by him to pro-

tect such right, or in a proceeding in which he asserts the right as a defense, has the burden of establishing it. Murphy v. De-France, 105 Mo. 53, 15 S.W. 949; 40 C.J. S., Homesteads, § 233, p. 715.

We do not think that appellant has met this burden. The evidence shows that appellant purchased this property in 1951, at which time she reserved an upstairs bedroom for her own use. She lived alone in this room on several occasions thereafter during the years 1951 and 1952. The property could not be regarded as her homestead during those years. Late in 1952, or early 1953, Jess Haney left Texas County, leaving his wife and three children. He went to Kansas City where he worked for the Central States Steel Company. Whether he contributed to the support of his family while so employed is not shown by the record. After Jess Haney left, Phyllis M. Haney and her children at various times stayed with appellant. The exact time and length of these visits are not shown, but it does appear that for a year prior to the trial, which was held in February, 1954, Phyllis M. Haney and children lived at the home of James F. Haney.

To establish a homestead there must be a bona fide intention of making the premises a homestead or permanent residence of a family. That intent must be determined from a consideration of all the facts and circumstances in the case, and not merely from the declaration of the parties. From the evidence in this case we find that appellant was not at the time of the issuance of the execution, or at the time of the levy, a "housekeeper" or "head of a family" within the meaning of the Homestead Act. For that reason, there was no duty on the sheriff to notify her of her homestead rights. Smith v. Thompson, 169 Mo. 553, 69 S.W. 1040.

Finding no error in the record, the judgment is affirmed.

LEEDY, P. J., and CAVE, Special Judge, concur.